**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**District Judge Robert E. Blackburn**

Civil Action No. 13-cv-01576-REB

FRANCISCO DOMINGUEZ,

      Applicant,

v.

LOU ARCHULETA, Warden, F.C.F., and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

**Blackburn, J.**

    This matter is before me on the *pro se* **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254** ("Application") [#1][1] filed on June 14, 2013, by Francisco Dominguez (Applicant").  Respondents filed an **Answer** [#23], and Applicant filed a **Traverse** [#24].

    After reviewing the pertinent portions of the record, including the Application, the Answer, the Traverse, and the state court record [#'s 21 and 22], I conclude that the Application should be denied.

## I.  Background

    Applicant entered into a plea agreement on March 16, 1998.  Pursuant to the agreement, Applicant agreed to plead guilty to second degree murder in return for which

---

[1][#1] is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

he would be subject to a thirty-six year sentencing cap.  Pre-Answer Resp [#9-9 at 6].

On March 17, 1998, the court held a providency hearing during which Applicant pled

guilty to second degree murder, and the court accepted his plea.  *Id.*  Subsequently on

March 27, 1998, the court held a hearing about a letter that Applicant had sent to the

trial court after the providency hearing.  *Id.*  In the letter, Applicant states he had entered

a guilty plea due to pressure from his defense attorneys, but he was not guilty and

wanted appointment of a new attorney.  *Id.*  After appointment of a new attorney, the

court held a hearing on the motion to withdraw the guilty plea on May 5, 1998, and

denied the motion.  *Id.*  On May 20, 1998, Applicant was sentenced to the department of

corrections for a term of thirty-six years.  *Id.*

On October 7, 1999, the Colorado Court of Appeals (CCA) affirmed Applicant's

conviction and sentence, [#9-8], and on March 13, 2000, the Colorado Supreme Court

(CSC) denied Applicant's petition for certiorari review [#9-6].  Subsequently, Applicant

filed several post-trial motions alleging various claims for relief, but he appealed only

one of the motions, a Colo. R. Crim. P. 35(c) postconviction motion.  [#9-5].  The trial

court's denial of the Rule 35(c) motion was affirmed on appeal by the CCA, [#9-4], and

Applicant's petition for certiorari review was denied on April 29, 2013, [#9-2].

Applicant filed this Application on June 14, 2013.  I conducted a preliminary

review and dismissed Claims Two and Three as procedurally barred from federal

habeas review. [#16].  The claims for relief that remain are

> (1) Denial of due process and ineffective assistance of
> counsel when his defense attorneys coerced him to plead
> guilty; and
>
> (2) Denial of due process because the interpreter did not
> properly interpret the plea advisement and ineffective

assistance of counsel when his defense attorneys failed to
address the allegedly flawed interpretation.

## II.  Analysis

### A.  Standard of Review

I must construe and have construed the Application liberally because Applicant is

not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hall*

*v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, I cannot act and have not

acted as an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be

issued with respect to any claim that was adjudicated on the merits in state court,

unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).

I review claims of legal error and mixed questions of law and fact pursuant to 28

U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The

threshold question pursuant to § 2254(d)(1) is whether Applicant seeks to apply a rule

of law that was clearly established by the Supreme Court at the time his conviction

became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  The review under

§ 2254(d) "is limited to the record that was before the state court that adjudicated the

prisoner's claim on the merits."  *Cullen v. Pinholster*, ---- U.S. ----, 131 S. Ct. 1388,

3

1398 (2011).  "Finality occurs when direct state appeals have been exhausted and a

petition for writ of certiorari from this Court has become time barred or has been

disposed of."  **Greene v. Fisher**, ---- U. S. ----, 132 S.Ct. 38, 44 (2011) (citing **Griffith v.**

**Kentucky**, 479 U.S. 314, 321, n. 6 (1987).

Clearly established federal law "refers to the holdings, as opposed to the dicta, of

[the Supreme] Court's decisions as of the time of the relevant state-court decision."

**Williams**, 529 U.S. at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where
> the facts are at least closely-related or similar to the case **sub judice**.
> Although the legal rule at issue need not have had its genesis in the
> closely-related or similar factual context, the Supreme Court must have
> expressly extended the legal rule to that context.

**House v. Hatch**, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of my inquiry under

§ 2254(d)(1).  **See id.** at 1018.  If a clearly established rule of federal law is implicated, I

must determine whether the state court's decision was contrary to or an unreasonable

application of that clearly established rule of federal law.  **See Williams**, 529 U.S. at

404-05.

> A state-court decision is contrary to clearly established federal law if: (a)
> "the state court applies a rule that contradicts the governing law set forth
> in Supreme Court cases"; or (b) "the state court confronts a set of facts
> that are materially indistinguishable from a decision of the Supreme Court
> and nevertheless arrives at a result different from [that] precedent."
> **Maynard** [**v. Boone**], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal
> quotation marks and brackets omitted) (quoting **Williams**, 529 U.S. at
> 405). "The word 'contrary' is commonly understood to mean 'diametrically
> different,' 'opposite in character or nature,' or 'mutually opposed.' "
> **Williams**, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly
> established federal law when it identifies the correct governing legal rule

from Supreme Court cases, but unreasonably applies it to the facts.  *Id.* at
407-08.  Additionally, we have recognized that an unreasonable
application may occur if the state court either unreasonably extends, or
unreasonably refuses to extend, a legal principle from Supreme Court
precedent to a new context where it should apply.  *Carter* [*v. Ward*], 347
F.3d. [860,] 864 [10th Cir. 2003] (quoting *Valdez* [*v. Ward*, 219 F.3d [1222]
1229-30 [10th Cir. 2000]).

*House*, 527 F.3d at 1018.

My inquiry under the "unreasonable application" clause is an objective one.  *See*

*Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the writ simply

because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly.  Rather that

application must also be unreasonable."  *Id.* at 411.  "[A] decision is 'objectively

unreasonable' when most reasonable jurists exercising their independent judgment

would conclude the state court misapplied Supreme Court law."  *Maynard*, 468 F.3d at

671.  In addition,

evaluating whether a rule application was unreasonable requires
considering the rule's specificity.  The more general the rule, the more
leeway courts have in reaching outcomes in case-by-case determinations.
[I]t is not an unreasonable application of clearly established Federal law
for a state court to decline to apply a specific legal rule that has not been
squarely established by [the Supreme] Court.

*Harrington v. Richter*, 131 S. Ct. 770, 786, 562 U.S. 86 (Jan. 19, 2011) (internal

quotation marks and citation omitted).  I "must determine what arguments or theories

supported or . . . could have supported[ ] the state court's decision" and then "ask

whether it is possible fairminded jurists could disagree that those arguments or theories

are inconsistent with the holding in a prior decision of [the Supreme] Court."  *Id.*  "[E]ven

a strong case for relief does not mean the state court's contrary conclusion was

5

unreasonable." *Id.* (citation omitted). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* (internal quotation marks and citation omitted).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671. Furthermore,

> [a]s a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S. Ct. at 786-87.

I review claims of factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations are correct, *see Sumner v. Mata*, 455 U.S. 591, 592-93 (1982), and Applicant bears the burden of rebutting the presumption by clear and convincing evidence, *see Houchin v. Zavaras*, 107 F.3d 1465, 1470 (10th Cir. 1997). "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.' " *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

A claim, however, may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim. ***Richter***, 131 S. Ct. at 784.  ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning").  Furthermore, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." ***Id.*** at 784-85.

In other words, I "owe deference to the state court's result, even if its reasoning is not expressly stated." ***Aycox v. Lytle***, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and pertinent federal law persuades [me] that [the] result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." ***Id.*** at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the [applicant's] claims." ***Id.*** (citation omitted).  Likewise, I apply the AEDPA deferential standard of review when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the applicant as the federal standard. ***See Harris v. Poppell***, 411 F.3d 1189, 1196 (10th Cir. 2005).  If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, I must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. ***See Gipson v. Jordan***, 376 F.3d 1193, 1196 (10th Cir. 2004).

**B.  Coercion/Due Process and Ineffective Assistance of Counsel**

Applicant asserts that prior to entering a guilty plea, his attorney advised him to plead guilty even though he did not want to do so.  [#1 at 5].  Applicant further asserts one of his defense attorneys told him that if he did not plead guilty, he would have to represent himself; so he agreed to the plea at the providency hearing out of fear of having to represent himself.  *Id.*  In his Traverse, Applicant contends his attorneys knew that there was a letter and recordings of the victim's girlfriend and her lover conspiring to kill the victim, and that the FBI had the girlfriend's lover in custody and believed he was the "trigger man."  [#24 at 3].  Applicant further contends that, even though they knew the truth, his attorneys opted not to take action on Applicant's behalf, because they wanted to reduce their case load and "dispose" of Applicant.  *Id.*

In addressing Applicant's coercion claim, the CCA concluded

> In this appeal, defendant contends that the trial court erred by denying his request to withdraw his guilty plea which he asserts was the result of undue influence or coercion by his counsel.  We disagree.

> To warrant a change of plea prior to sentencing, a defendant must demonstrate a "fair and just reason" for the withdrawal of his plea.  ***People v. Lewis***, 849 P.2d 855 (Colo. App. 1992).

> A defendant must also show that he was improperly influenced to enter a guilty plea although he had a defense, that he entered the plea through fear, fraud, or official misrepresentation, or that he entered the plea involuntarily.  ***People v. Adams***, 836 P.2d 1045 (Colo. App. 1991).

> Competent advice of counsel, even if stated in strong language, does not constitute coercion; defense counsel has a duty to discuss defendant's case with complete candor and to offer the best estimate possible as to the outcome.  ***People v. Adams, supra***.

> The decision to permit a change of plea is within the trial court's sound discretion, and an appellate court will not disturb it on review absent an abuse of discretion.  ***People v. Lewis, supra***.

Here, testimony from defendant's attorneys reveals that, although they advised him it was in his best interests to accept the plea bargain, defendant expressed some reluctance to accept it.

The day before defendant's providency hearing, he signed a statement in support of his plea agreement. Among other things, he averred that he had fully discussed the matter with his attorney, that he was pleased with his attorney's services, that he made the plea freely and voluntarily, and not because of anyone's force, pressure, or coercion. He also maintained that he understood his right to plead not guilty and to have a jury trial.

On the morning of the scheduled entry of plea, defendant wavered on his decision to accept the bargain. When he was advised by his attorney that he must decide to accept or reject the offer, defendant said, "I'll take it. I'll plead guilty."

That afternoon, at the providency hearing, the defendant confirmed that he had signed the statement in support of his plea, that he understood the document, that he had fully discussed the plea with counsel, that he was satisfied with his attorneys' services and that he did not need more time to discuss the matter with counsel.

When the court asked defendant why he was pleading guilty, he answered, "Because somebody dies [*sic*]. I guess." The court replied that it could not accept a guilty plead for that reason. According to defendant's attorney's testimony at the Crim. P. 35(c) hearing, he then whispered to defendant that if defendant wanted to play games with this, to tell him now and he'd stop this proceeding, and they would walk out of this room and get defendant a trial.

He told defendant that if he wanted a trial, he would get one, and that if he wanted to take this deal, he needed to tell the court that he was pleading guilty because he was guilty.

Defendant then said, "I'm pleading guilty because I'm guilty, Your Honor."

Our review of the record satisfies us that defendant was not coerced into pleading guilty. He met with counsel on numerous occasions, asked questions regarding both the plea and going to trial, was given advice based on sound professional experience, and was not unduly pressured by time constraints. He also had the opportunity to consult with his family and had an interpreter. *See People v. Lewis, supra*, and ***People v. Adams, supra.***

*People v. Dominguez*, 98CA1249, 2-4 (Colo. App. Oct. 7, 1999); [#9-8 at 4-6].

"A plea bargain standing alone is without constitutional significance," and "[i]t is only when the consensual character of the plea is called into question that the validity of a guilty plea may be impaired." *See Mabry v. Johnson*, 467 U.S. 504, 507-09 (1984), *abrogated in part on other grounds*, *Puckett v. United States*, 556 U.S. 129, 129 S.Ct. 1423, 1430 n. 1 (2009).

A defendant does not have an absolute right to withdraw a guilty plea, *United States v. Siedlik*, 231 F.3d 744, 748 (10th Cir. 2000) (citing *United States v. Rhodes*, 913 F.2d 839, 845 (10th Cir. 1990), and a defendant bears the burden of showing a fair and just reason for withdrawal of his plea, *id.* (citations and quotation marks omitted). There are seven factors to consider when applying the fair and just standard in a motion filed by a federal defendant to withdraw a plea under Fed. R. Crim. P. 11(d)(2)(B), including:

> 1) whether the defendant has asserted his innocence; (2) whether withdrawal would prejudice the government; (3) whether the defendant delayed in filing his motion, and if so, the reason for the delay; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available to the defendant; (6) whether the plea was knowing and voluntary; (7) whether the withdrawal would waste judicial resources.

*United States v. Yazzie*, 407 F.3d 1139, 1142 (10th Cir. 2005) (citing *United States v. Sandoval*, 390 F.3d 1294, 1298 (10th Cir. 2004).

Like Fed. R. Crim. P. 11(d)(2)(B) , Colo. R. Crim. P. 32(d) is subject to a fair and just standard of review. *People v. Chippewa*, 751 P.2d 607 (1988) (citations omitted). Only two of the seven factors identified above – whether close assistance of counsel was available and the plea was knowing and voluntary – address the consensual

10

character of Applicant's plea and are appropriate for federal habeas review. *See id.* at 611 n. 6 (abuse of discretion principles do not reach the constitutional question of whether a defendant's plea was entered knowingly or voluntarily).

A defendant is entitled to the effective assistance of counsel during plea negotiations, which includes the entry of a guilty plea. *See Missouri v. Frye*, 132 S.Ct. 1399, 1405 (2012) (citing *Argersinger v. Hamlin*, 407 U.S. 25 (1972)).  When a habeas applicant challenges a guilty plea based upon ineffective assistance of counsel, the deficient performance prong of the *Strickland* test requires proof of a lack of reasonably competent advice concerning the plea. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). An applicant must satisfy the prejudice inquiry by showing that the constitutionally ineffective performance "affected the outcome of the plea process.  "In other words . . . that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.  Conclusory allegations without supporting factual averments are insufficient to support a claim of ineffective assistance of counsel. *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).

At the providency  hearing, the colloquy between Applicant and the court regarding Applicant's guilty plea was as follows:

THE COURT:  All right.

Mr. Dominguez, you heard Mr. Myers announce that there has been a disposition in the case.  And the disposition is that they will file an amended information. The information is the document that formally accuses you of having violated the law of the State of Colorado.  The amended information -- actually, it's the second amended information -- alleges in Count 5 -- charges you with causing the death of Kenneth Todd Skidmore; and that is a class 2 felony, murder in the second degree.

Mr. Myers has indicated you're going to plead guilty to that, murder in the second degree.  The other charges against you will be dismissed.

The range of penalties for second-degree murder are from the low side, 16 years; high side, 48 years.  The district attorney and your attorneys, Mr. Greer and Mr. Conway, are asking me, the Court, to accept a cap of 36 years in the Colorado Department of Corrections.

When I heard that a disposition was in the works yesterday, I wondered what the disposition would be.  I ordinarily do not agree to be bound by a disposition which includes a cap -- that is a top sentence.

I have heard the preliminary hearing in this case; I am very familiar with the evidence -- not with all the evidence, but I'm familiar with the evidence, and I am willing to be bound by the agreement between the district attorney and you and your attorneys that your sentence will not exceed 36 years.

So would you like to go forward with your plea of guilty, Mr. Dominguez?

MR. DOMINGUEZ:  Fuck.

(Discussion between the interpreter and Defendant was held off the record.)

MS. LOCKWOOD:  He's going to go ahead and accept it.

THE COURT:  All right.  Then the first matter need to take up is the second motion to amend the information.

Mr. Greer, speaking for Mr. Dominguez, do you have the second motion to amend?

MR. GREER:  I do, Your Honor.  I have no objection to the second motion to amend.

THE COURT:  The Court grants that motion.

MR. GREER: I would waive further formal advisement as to the amendment.

THE COURT: All right.

12

Mr. Dominguez, I have here a document.  It is in this case, Rio Blanco County District Court criminal  action 97-CR-29, the People of the State of Colorado against Francisco Rojas Dominguez, and the document is entitled, Statement by Defendant in Support of a Plea of Guilty.  On page 3 at paragraph 20 it says, "I wish to plead guilty to murder in the second degree, a class 2 felony as set out in Count 5 of the information."

Do you see that, Mr. Dominguez?

MR. DOMINGUEZ: Yes.

THE COURT:  Then, Mr. Dominguez, if you -- I'm holding up page 5 of this document now.  And if you can't see it, I'll have it handed down to you.  But there is a signature here that I'm pointing to, and I need to know if that is your signature.

MR. DOMINGUEZ: Yes, sir.

THE COURT:  Mr. Dominguez, did you sign this document today or yesterday?

MR. DOMINGUEZ: Yesterday.

THE COURT:  Mr. Dominguez, before you signed the document, did you read it and did you have access to an interpreter so you could discuss this document with your attorneys?

MR. DOMINGUEZ: Yes, sir.

THE COURT: Are you satisfied at this moment, Mr. Dominguez, that you understand the document?

MR. DOMINGUEZ:  Yes, Your Honor.

THE COURT:  All right.  Mr. Dominguez, let me direct your attention to the first page.  It says in paragraph 1, "My name is Francisco Rojas Dominguez."

That is your name, is it not?

MR. DOMINGUEZ:  Yes, sir.

THE COURT:  And then it says in paragraph 2, "Although I understand the English language, Spanish is my native language.  This document has been fully translated for me by my Spanish interpreter."

Is that correct?

MR. DOMINGUEZ:  Yes, Your Honor.

THE COURT:  Next paragraph, number 3, says, "I have completed" -- and the document I have up here has 11 – "11 years of school."

Is that accurate; did you complete 11 years of school?

MR. DOMINGUEZ:  Yes, Your Honor.

THE COURT: As I understand it, those 11 years of school were completed in the state of Chihuahua, Mexico?

MR. DOMINGUEZ:  No, sir, that was Bell Gardens, California.

THE COURT:  So do you have 11 years of school?

MR. DOMINGUEZ:  Yes, sir.

THE COURT:  And that was in the United States?

MR. DOMINGUEZ:  Yes, sir.

THE COURT:  All 11 years?

MR. DOMINGUEZ:  Yes, sir.

THE COURT:  Paragraph 4: "I am not now under the influence of any drug, medication, or alcohol that would impair my understanding of this statement."

Is that correct, Mr. Dominguez?

MR. DOMINGUEZ:  Yes, Your Honor.

THE COURT:  Number 5: "I am not at this time mentally ill or suffering from any emotional or mental disability that would impair my understanding of this statement."

Is that correct?

MR. DOMINGUEZ:  Yes, Your Honor.

THE COURT:  You understand you have the right to an attorney, and you presently have two attorneys representing you; is that correct?

MR. DOMINGUEZ:  Yes.

THE COURT:  Paragraph 7: "I have discussed this matter fully and completely with my attorney and am satisfied my attorney's services."

Is that a correct statement?

MR. DOMINGUEZ:  Yes, Your Honor.

THE COURT:  Number 8: "I understand that I may discuss this matter further with my attorney before I sign this statement."

Do you need more time to talk to your lawyers?

MR. DOMINGUEZ:  No, Your Honor.

THE COURT:  Number 9: "I understand that a plea of guilty admits truth of the charge, and a plea of not guilty denies the charge."

Do you understand those?

MR. DOMINGUEZ:  Yes, Your Honor.

THE COURT:  Number 10: "My plea of guilty is made freely and voluntarily; my plea of guilty is not the result of force, pressure, or coercion by anyone."

That means no force, coercion, or pressure other than the trial of the lawsuit.

MR. DOMINGUEZ:  Yes, Your Honor.

THE COURT:  You understand that?  Okay.  I'd like for you please to turn over to page 3.  And let's begin again discussing your plea of guilty, paragraph 21, which says, "The elements of the offense of murder in the second degree to which I am pleading are" -- and then it has four numbers under there:  1, that the Defendant, Francisco Rojas Dominguez; number 2, in the State of Colorado, County of Rio Blanco, on or about March 6, 1997; number 3, knowingly; and number 4, caused the death of another person, namely Kenneth Todd Skidmore.

Is all of that correct?

MR. DOMINGUEZ:  Yes, Your Honor.

THE COURT:  Then underneath that it says "complicity," and there has some other language there which I won't go over with you, but I want to make sure that you have had an opportunity to read that language and that you understand it.

MR. DOMINGUEZ:  Yes, I understand that.

THE COURT:  Then look at number 22, please, sir.

"I understand that if the Court accepts my plea of guilty, I may be sentenced to the Department of Corrections for a term of 8 to 24 years, with extreme mitigating circumstances, the sentence could be as little as four years, with extreme aggravating circumstances, the sentence could be as much as 48 years.["]

"I understand that the sentence may carry a fine of 5,000 to $1 million."

Do you see that language?

MR. DOMINGUEZ:  Yes, Your Honor.

THE COURT:  Then let's look at paragraph 23 on the next page.  It is stipulated and agreed between the Defendant and the district attorney that the sentence in this case shall not be greater than 36 years in the Colorado Department of Corrections.  Do you see that language?

MR. DOMINGUEZ:  Yes, Your Honor.

THE COURT:  The way I read that language, it means that we will get a presentence report from the probation office, that we will have a sentencing hearing, and that while you could receive up to 48 years in prison, you cannot get -- pursuant to this disposition, pursuant to the arrangement -- bargain -- you've made with the district attorney, you may not be sentenced to more than 36 years in the Department of Corrections.

Do you understand that?

MR. DOMINGUEZ:  Yes.

THE COURT:  I don't believe that number 24 has any applicability here.

Is there any other sentence that Mr. Dominguez is presently serving?

MR. GREER:  There is not, Your Honor.

THE COURT:  All right.  Look at number 25 then, please, Mr. Dominguez. It says, "My plea is voluntary, it is not the result of any undue influence or coercion or force on the part of anyone."

Is that an accurate statement, sir?

MR. DOMINGUEZ:  Yes, Your Honor.

THE COURT:  All right.  And number 26: "I understand the right to a trial by jury.  I expressly waive my right to trial by jury on all issues."

Is that accurate?

MR. DOMINGUEZ: Yes.

THE COURT:  Number 27: "I understand the nature of the charge and the elements of the offense to which I am pleading and the effect of my plea."

Is that correct?

MR. DOMINGUEZ: Yes.

THE COURT: And you understand that the elements of the offense are back in paragraph 21, which we've already gone over, but you may look at that again if you wish.
MR. DOMINGUEZ: Yes, Your Honor.

THE COURT:  All right.  Number 28: "I understand that the Court will not be bound by any representations or promises that may have been made to me by anyone concerning the penalty to be imposed or the granting or the denial of probation."

It's correct that I would not ordinarily be bound by anything anyone else has told you, but I have agreed to be bound in this proceeding to a maximum sentence of 36 years.

So do you understand all of that?

MR. DOMINGUEZ: Yes.

THE COURT:  Number 29: "The plea agreement is expressly contingent on the Defendant not committing any criminal offenses between this date and the time of sentencing."

Do you understand that agreement will be void if you commit another criminal offense between today and the time of your sentencing?

MR. DOMINGUEZ:  Yes, Your Honor.

THE COURT:  I just realized we don't have a clerk.

Number 30: "This plea agreement is also expressly contingent on Defendant's criminal history being the following:  No prior felony convictions."

Is that agreed upon already? No prior felony convictions?

MR. MYERS:  Yes, Judge.

MR. GREER:  It is, Your Honor.

THE COURT:  There are no prior convictions that would interfere with this disposition.

Number 31: "I agree that there is a factual basis for the plea of guilty to the crime charged as stated, and waive any further necessity of a factual basis for the plea."

A factual basis, Mr. Dominguez, means that there are facts -- actual facts -- that would support the Court's finding that you committed the offense of second-degree murder by killing Mr. Skidmore.  As you are aware, I've heard several hearings here, and I'm persuaded that there is a factual basis for your plea.

Do you have any questions about that?

MR. DOMINGUEZ:  Yes, Your Honor.

THE COURT:  All right.  And number 32: "No representations have been made to me which guarantee earned credit, good time, or a parole eligibility date.  I understand that I may have to serve the maximum term prior to parole eligibility.  Five years of parole shall be added following service of my sentence in the Department of Corrections."

Do you have any questions about that paragraph, Mr. Dominguez?

MR. DOMINGUEZ:  I don't know.

(Discussion between the interpreter and Defendant was held off the record.)

MR. DOMINGUEZ:  I understand, Your Honor.

THE COURT: Do you?  All right.  Then direct your attention, please, to paragraph 33: "I understand that restitution, costs of prosecution, and court costs may be assessed as part of my sentence."

Do you understand that language?

MR. DOMINGUEZ:  Yeah.

THE COURT:  And number 34: "I understand that the Court can consider dismissed counts for sentencing and restitution purposes."

MR. DOMINGUEZ: Yes, Your Honor.

THE COURT:  And turn the page, please.  Number 35: "The district attorney has made no sentence concessions other than those expressly stated in the document, that is that you'll have a maximum sentence of 36 years."

Is that the representation you've made, Mr. Myers?

MR. MYERS:  It is, Judge.

THE COURT:  And only that?

MR. MYERS:  Only that.

MR. DOMINGUEZ:  Yes, Your Honor.

THE COURT:  And number 36: "Counts 1, 2, 3 and 4 shall be dismissed as part of the plea agreement in this case."
Do you understand that?

MR. DOMINGUEZ:  Yes.

THE COURT:  All right.

Mr. Dominguez, please turn back now to page 3, and please look at paragraph 20: "I wish to plead guilty to murder in the second degree."

Do you have it now?

MR. DOMINGUEZ: Yes, sir.

THE COURT:  Number 20: "I wish to plead guilty to murder in the second degree, a class 2 felony, as set out in Count 5 of the information."

Do you see that?

MR. DOMINGUEZ:  Yes, sir.

THE COURT:  And the following paragraph, please look at that, too:  The elements of the offense of murder in the second degree to which I'm pleading guilty are that the Defendant, Francisco Rojas Dominguez; and in the State of Colorado, County of Rio Blanco, on or about March 6,1997; knowingly; caused the death of another person, namely Kenneth Todd Skidmore.

Why are you pleading guilty to second-degree -- murder in the second-degree, Mr. Dominguez?

MR. DOMINGUEZ:  Because somebody die, I guess.  You know.  I plead guilty, Your Honor, for a person, you  know, dying.

THE COURT:  I need to know what you mean by that.  Underneath those elements is a word called "complicity," and it's underlined.  And if you follow me through that complicity wording: "A person is legally accountable as principal for the behavior of another constituting a criminal offense if: With the intent to promote or facilitate commission of the offense, the defendant aids, abets, or advises the other person in
planning or committing the offense; a person acts intentionally or with intent when his conscious objective is to cause the specific result proscribed by the statute defining the offense.

[sic]It is immaterial whether or not the result actually occurred.  And then a person acts knowingly or willfully with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists;

A person acts knowingly or willfully with respect to a result of his conduct when he is aware that his conduct is practically certain to cause the result.

So Mr. Dominguez, I don't believe I can accept a plea of guilty if you simply say that someone died.  The charge that you're pleading guilty

to says that you knowingly caused the death of Kenneth Todd Skidmore. Is that what you're pleading guilty to?

MR. DOMINGUEZ:  I'm pleading guilty because I'm guilty, Your Honor.

THE COURT:  Are you sure of that?

MR. DOMINGUEZ:  Yes, Your Honor.

THE COURT:  All right.

Mr. Greer, did you sign the certificate of counsel?

MR. GREER: I did.

THE COURT:  And Mr. Johnson appears to have signed the certificate of interpreter.

Mr. Dominguez, do you know Mr. Johnson?

MR. DOMINGUEZ:  What is that, sir?

THE COURT:  Do you know Mr. Johnson, the person who interpreted for you yesterday?

MR. DOMINGUEZ:  Yes, Your Honor.

THE COURT:  I recognize his signature.

Based upon the discussion we've had here in court today, based upon the documents which have been given to me today, including the second motion to amend the information -- the second amended information, the statement by Defendant in support of a plea of guilty, certificate of counsel, and the certificate of interpreter, and based also upon the Court's knowledge of the case through a preliminary hearing and various suppression hearings, the Court finds that the Defendant, Francisco Rojas Dominguez, understands the nature and elements of the offense of murder in the second degree to which he is pleading guilty; and the Court also finds that Mr. Dominguez understands the effect of his plea of guilty to that offense.

The Court finds that Mr. Dominguez' plea of guilty is voluntary, it is not the result of any undue coercion on the part of anyone.

> Mr. Dominguez understands his right to a jury trial; Mr. Dominguez understands he's waiving that right on all issues by this plea of guilty.  Mr. Dominguez understands that the Court is not bound by representations made to him by anyone other than the Court concerning the penalty to be imposed.
>
> The Court has agreed to be bound by a cap of 36 years in the Colorado Department of Corrections.  Mr. Dominguez understands the possible penalties.
>
> There is a factual basis for Mr. Dominguez' plea of guilty.  Accordingly, the Court accepts Mr. Dominguez' plea of guilty, finds Mr. Dominguez guilty of second-degree murder occurring in Rio Blanco County, Colorado, on or about the 6th day of March, 1997.  That murder was the knowing murder -- that Mr. Dominguez knowingly caused the death of Kenneth Todd Skidmore.

Case No. 97CR29, Trial Tr. Mar. 17, 1998 Hr'g at 5-20.

The Tenth Circuit has noted that the "colloquy between a judge and a defendant before accepting a guilty plea is not *pro forma* and without legal significance.  Rather, it is an important safeguard that protects defendants from incompetent counsel or misunderstandings."  *Fields v. Gibson*, 277 F.3d 1203, 1214 (10th Cir. 2002).  Further, "[n]umerous courts have denied relief under §§ 2254 and 2255 to petitioners alleging that their guilty pleas were the product of ineffective assistance, where the plea colloquies have demonstrated otherwise."  *Hammons v. Paskiewicz*, 368 F. App'x. 904, 907 (10th Cir. 2010) (citing *Fields*, 277 F.3d at 1214).

Applicant had the opportunity during the colloquy with the judge at his providency hearing to address counsel's alleged coerciveness or any disagreement he had with counsel regarding the plea.  He did not give any indication throughout the colloquy that he felt he was being coerced into pleading guilty or that he misunderstood or disagreed with counsel.  The only possible indication of frustration was when Applicant uttered an

22

obscenity after the judge asked if he was ready to proceed with the plea, Trial Tr. Mar.
17, 1998 Hr'g at 6, but Applicant then talked with the interpreter who stated to the judge
that Applicant was going to accept the plea.  *Id.*  Applicant also talked with his
interpreter about having to serve the maximum term of his sentence and being subject
to parole, but again stated he understood that term of the plea agreement.  *Id.* at 15.

Finally, Applicant, in response to the judge's question why he was pleading guilty
to second degree murder, stated that he was pleading guilty because "someone die."
*Id.* at 17.  The judge stated he could not accept Applicant's response to why he was
pleading guilty and discussed the complicity element with Applicant.  *Id.* at 17-18.  Then
after Applicant consulted with his attorney the judge asked Applicant why he was
pleading guilty to which Applicant replied, "I'm pleading guilty because I'm guilty, Your
Honor."  *Id.* at 18.  The judge asked Applicant if he was sure and he responded, "Yes,
Your Honor."  *Id.*  Nothing in the trial transcript for the providency hearing indicates that
Applicant was coerced by his attorneys to plead guilty or his plea was involuntary or
unintelligent.

Concerning the change of plea hearing, Applicant stated repeatedly that both
attorneys kept telling to him to just say "yes" in response to the judge's questions.  Trial
Tr. May 5, 1998 Hr'g at 8-38.  Applicant further testified at the change of plea hearing
that during the providency hearing one attorney, Mr. Greer, set to his right, and the
other attorney, Mr. Conway, set to his left.  *Id.* at 13.  Nonetheless, both of Applicant's
attorneys testified at the change of plea hearing that Mr. Greer set to the left of
Applicant and the interpreter set to his right.  *Id.* at 66 and 81.  Furthermore, the judge
agreed that Mr. Greer set to the left of Applicant and spoke only once to Applicant

during the hearing.  *Id.* at 107-08.  The judge further stated that he knew this because he made it a practice to watch the interaction between a defendant and his attorney to determine if the defendant is entering his "own" guilty plea.  *Id.* at 108.

Also, at the change of plea hearing, the court asked Applicant if he remembered the question and answer dialogue that he had with the court and Applicant responded that he remembered.  *Id.* at 5-20.  Applicant also stated at the change of plea hearing that he remembered being asked at the providency hearing if anyone had threatened him to enter his plea and he responded he did remember that question.  *Id.*  Applicant further stated at the change of plea hearing that when the judge at providency hearing asked if he was being threatened he responded that he understood the question.  *Id.*

State court factual findings, including credibility findings, are presumed correct, absent clear and convincing evidence to the contrary.  *See*  28 U.S.C. § 2254(e)(1); *see also Marshall v. Lonberger*, 459 U.S. 422, 431-34 (1983).  Based on the above findings, Applicant has not demonstrated that the factual findings of the state court are clearly and convincingly incorrect.  Applicant had the opportunity during the colloquy with the judge at the providency hearing to state he was being coerced by his attorneys to plead guilty, which he did not do.  At the change of plea hearing, he represented that he understood the questions the judge asked at the providency hearing.  Based on the judge's observations, and both attorneys' testimony, there is no evidence that the attorneys were coercive during the providency hearing as Applicant suggests, or that otherwise Applicant's plea was involuntarily or unknowingly made.

I, therefore, defer to the state court's determination that Applicant's defense attorneys  were not coercive, *see* 28 U.S.C. § 2254(e)(1); *Church v. Sullivan*, 942 F.2d

1501, 1516 (10th Cir. 1991) (finding that a federal court sitting in habeas review must treat a state court's finding regarding witness credibility as a finding of fact entitled to deference).

Furthermore, the record strongly supports the conclusion that Applicant would have pled guilty even absent the alleged deficiencies by his defense attorneys.  In *Miller v. Champion*, 262 F.3d 1066, 1074-75 (10th Cir. 2001), the Tenth Circuit determined that the strength of a prosecutor's case may be used as circumstantial evidence of what an applicant would have done had counsel not been ineffective.  The evidence available to the prosecution in Applicant's case supported a finding that Applicant drove the car to the location where the victim was murdered, he knew the victim was tied up in the trunk of the car, he was involved in the decision to tie up the victim, and he participated in assaulting the victim before he was driven to a rural location where the victim was shot execution style.  Trial Tr. May 5, 1998 Hr'g at 110. Because the strength of the prosecution's case provides sufficient circumstantial evidence against Applicant, the evidence dictates against a finding of prejudice.  *See Miller*, 262 F.3d at 1074-75.

Having reviewed the entire record, I find that Applicant can not establish a reasonable probability that, but for his defense attorneys' alleged ineffective assistance, "he would not have pleaded guilty and insisted on going to trial."  *Hill*, 474 U.S. at 59.  I also find that there is a reasonable evidentiary basis for finding that defenses attorneys satisfied the *Strickland* deferential standard.  *See Richter*, 131 S. Ct. at 788.

The CCA decision regarding this claim did not result in a decision that was contrary to, or involve an unreasonable application of, clearly established Federal law,

as determined by the Supreme Court of the United States and did not result in a

decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the state court proceeding.  The coercion claim lacks merit; and

Applicant is not entitled to relief.

## C.  Flawed Interpreting/Due Process and Ineffective Assistance

Applicant contends that the interpreter did not properly interpret the court's verbal

advisement and his defenses attorneys failed to oversee that the advisement was

proper.  [#1 at 8.]  Applicant further asserts that the interpreter spoke a different dialect

of Spanish; and when he attempted to tell his attorneys they "didn't want to hear it."  *Id.*

In the Traverse, Applicant further contends that numerous times he told his defense

attorneys he was having difficulty understanding the interpreter, but that his defense

attorneys told him that he understood English well enough to comprehend what was

being presented.  [#24 at 5.]

In addressing Applicant's interpreter claim, the CCA concluded as follows:

> We first reject defendant's argument that his counsel was
> ineffective by allowing him to sign the plea agreement even though his
> interpreter did an inadequate job.  The record before us indicates that
> defendant personally addressed a letter in English to the trial court stating
> reasons why he should be allowed to withdraw his plea.  The record also
> contains a transcript of the sentencing hearing during which defendant
> said that he did not need an interpreter to sit with him to interpret the
> proceedings.  Indeed, the transcript contains numerous examples of the
> trial court and defendant speaking to one another, with defendant politely
> answering "Yes, sir" and "No, sir" to questions posed by the trial court.
> The trial court allowed a recess for defendant to discuss whether he
> wished to testify at the sentencing hearing after he had said that he would
> like to avail himself of that opportunity.  At all stages of the proceeding, it
> appears that defendant had no difficulty understanding English, and at no
> time did he request an interpreter to assist him in interpreting the
> proceedings.  We therefore conclude that the record before us
> affirmatively demonstrates that defendant understood what was

> happening at the sentencing hearing. There is nothing in the record
> indicating that he did not equally appreciate and understand the plea
> agreement. *Lacy v. People*, 775 P.2d 1, 4 (Colo. 1989); *People v.
> Denton*, 539 P.2d 1309, 1311 (Colo. App. 1975). Consequently, the
> record refutes any suggestion that defendant's counsel was ineffective in
> allowing him to sign the plea agreement because of any purported
> language difficulty.

*People v. Dominguez*, 11CA1908, 4-5 (Colo. App. Nov. 1, 2012); [#9-4 at 6-7].

Because a criminal defendant waives numerous constitutional rights when he

pleads guilty, a plea must be entered into knowingly and voluntarily to be constitutionally

valid. *Boykin v. Alabama*, 395 U.S. 238, 244 (1969). "The standard was and remains

whether the plea represents a voluntary and intelligent choice among the alternative

courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31

(1970)). In applying this standard, I must look at the totality of circumstances

surrounding the plea. *Id.* A criminal defendant's solemn declaration of guilt carries a

presumption of truthfulness. *Henderson v. Morgan*, 426 U.S. 637, 648 (1976). A

criminal defendant cannot successfully challenge the voluntariness of his plea merely on

the basis that he was motivated to plead guilty. *Brady v. United States*, 397 U.S. 742,

750 (1970).

Applicant had the opportunity during the colloquy with the judge at his providency

hearing to inform the judge that he did not understand the interpreter. On only two

occasions, when the judge was reviewing with Applicant each paragraph of the plea

agreement and asking Applicant if he understood the language of the paragraph, did

Applicant conference with the interpreter and then respond to the judge that he

understood the language. Trial Tr. Mar. 17, 1998 Hr'g at 6 and 15. The judge had

instructed the interpreter to inform him that if at any time she believed Applicant did not

27

understand to let him know. *Id.* at 3.  At no time during the colloquy, did the interpreter inform the judge that Applicant did not understand the interpreter; nor did Applicant state directly to the judge that he did not understand what the interpreter was saying to him.

As stated above, the judge indicated that as a practice in criminal cases, he watches the interaction between a defendant and his attorney(s) to determine whether a defendant is entering his own guilty plea.  Trial Tr. May 5, 1998 Hr'g at 108.  Furthermore, as found above, at the providency hearing Applicant conversed with one of his attorneys on one occasion.  *Id.* at 107-08.

Furthermore, Applicant conceded, when testifying at the change of plea hearing, that he understands English, *id.* at 33, and at his sentencing hearing indicated that he did not need an interpreter when he testified, Trial Tr. May 20, 1998 Hr'g at 22.  Nothing in the trial transcripts indicates that Applicant's interpreter was inadequate.

Furthermore, even if Applicant's interpreter was inadequate and he was unable to understand the judge's questions during the colloquy at the providency hearing, Applicant does not assert the interpreter at the providency hearing stated anything different to him than what was stated in the written agreement, which was translated to Applicant in Spanish prior to his signing the agreement a day prior to the providency hearing.  Trial Tr. Mar. 17, 1997 Hr'g at 8.

Finally, Applicant's attorney may not be found ineffective if he is unaware of information that only a defendant could have provided.  *See Hill v. Lockhart*, 474 U.S. 52, 61-62 (1985) (White, J. concurring) (without an allegation that counsel knew of a prior conviction is counsel ineffective for not informing defendant of the State second

offender statute); ***Dever v. Kansas State Penitentiary***, 36 F.3d 1531, 1538 (10th Cir. 1994) (holding counsel could not be held ineffective where counsel failed to object to testimony of a witness that was contrary to sworn statement of other witness when sworn statement was not known to counsel).

Based on the judge's observance of the interaction between Applicant and his attorneys during the colloquy, and the attorneys' testimony at the change of plea hearing that only one attorney communicated with Applicant during the colloquy, which was to address Applicant's statement to the judge as to why he was pleading guilty, Trial Tr. May 5, 1998 Hr'g at 65, I find Applicant did not inform his attorneys during the providency hearing that his interpreter was improperly communicating the judge's questions to him and he was unable to understand the interpreter.  Applicant, therefore, has failed to assert his attorneys were ineffective in addressing the alleged inadequacy of the interpreter.

I, therefore, find that the CCA decision set forth above regarding Applicant's interpreter claim did not result in a decision that was contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  The interpreter claim lacks merit; and Applicant is not entitled to relief.

Under 28 U.S.C. § 2253(c)(2), I may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  Such a showing is made only when a prisoner demonstrates that jurists of reason would find it

debatable that a constitutional violation occurred, and that the district court erred in its resolution.  Applicant has not made a substantial showing of the denial of a constitutional right.  Therefore, a certificate of appealability is denied.

Under 28 U.S.C. § 1915(a)(3), I certifiy that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal.  ***See Coppedge v. United States***, 369 U.S. 438 (1962).  If Applicant files a notice of appeal, he also must pay the full appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

### III. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That the *pro se* **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254** [#1 ] filed on June 14, 2013, by Applicant Francisco Dominguez is **DENIED**;

2. That this case is **DISMISSED WITH PREJUDICE**;

3.  That a certificate of appealability **SHALL NOT ISSUE** under 28 U.S.C. § 2253(c); and

4.  That leave to proceed *in forma pauperis* on appeal is **DENIED** without prejudice to the filing of a motion seeking leave to proceed *in forma pauperis* on appeal in the United States Court of Appeals for the Tenth Circuit.

DATED at Denver, Colorado, January 13, 2015.

BY THE COURT:

Robert E. Blackburn
United States District Judge